IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| MARY JO TOLLISON,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>**Commissioner of Social Security,**<br><br>    Defendant. | No. 2:12-cv-00004<br>**Judge Nixon**<br>**Magistrate Judge Brown** |

## ORDER

Pending before the Court is Plaintiff Mary Jo Tollison's ("Plaintiff") Motion for Judgment on the Administrative Record ("Motion") (Doc. No. 12), filed with a supporting Memorandum. (Doc. No. 13.) Defendant Commissioner of Social Security, filed a Response in Opposition. (Doc. No. 18.) Magistrate Judge Brown subsequently issued a Report and Recommendation ("Report"), recommending that Plaintiff's Motion be denied and that the decision of the Commissioner be affirmed. (Doc. No. 19.) Plaintiff filed Objections to the Report. (Doc. No. 20.) Defendant filed a Response to Plaintiff's Objections. (Doc. No. 21.) Upon review of the Magistrate Judge's Report and for the reasons discussed herein, the Court **ADOPTS** the Report in its entirety and **DENIES** Plaintiff's Motion.

I. BACKGROUND

    *A. Procedural Background*

Plaintiff filed for Supplemental Security Income ("SSI") benefits on July 7, 2008, alleging disability with an onset date of June 30, 2007. (Tr. 137–40.) Plaintiff claimed that she suffered severe pain, bleeding, and difficulty walking, bending, and lifting that limited her ability

1

to work because of a hernia and gallstones. (Tr. 153.) On September 10, 2008, the Commissioner denied her claim. (Tr. 60.) On September 16, 2008, Plaintiff requested reconsideration of her claim (Tr. 64) and on November 7, 2008, the Commissioner again denied Plaintiff's SSI claim (Tr. 68). On November 21, 2008, Plaintiff timely requested a hearing before an Administrative law Judge ("ALJ"). (Tr. 70.) On January 25, 2010, Plaintiff, appearing without representation, and Vocational Expert ("VE") Katharine Bradford appeared before ALJ K. Dickson Grissom, who ordered a consultative medical examination and scheduled a supplemental hearing on July 26, 2010. (Tr. 36, 55, 22.) VE Ernest Brewer appeared and testified at the second hearing. (Tr. 29–34.) On August 23, 2010, the ALJ found that Plaintiff was not disabled under the Social Security Act, making the following findings of fact and conclusions of law:

> 1. The claimant has not engaged in substantial gainful activity since July 7, 2008, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: ventral hernia; gallstones; chronic obstructive pulmonary disease; and obesity (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a limited range of light work as defined in 20 CFR 416.967(b) except she would require a sit/stand option that would afford her to change standing and walking positions after 30 minutes, with no limitations on sitting. She would be precluded from any climbing, kneeling, crouching, crawling, working around hazards such as dangerous moving machinery or unprotected heights, and no more than occasional bilateral pushing or pulling with lower extremities.
>
> 5. The claimant is capable of performing past relevant work as a cashier. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6. The claimant has not been under a disability, as defined in the Social Security Act, since July 7, 2008, the date the application was filed (20 CFR 416.920(f)).

(Tr. 14–17.)

On August 23, 2010, Plaintiff timely requested the Appeals Council review the ALJ's decision. (Tr. 1.) On November 18, 2011, the Appeals Council denied Plaintiff's request for review, rendering ALJ Grissom's decision the final decision of the Commissioner. (Tr. 1–3.)

Plaintiff filed this action on January 20, 2012, seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g). (Doc. No. 1.) On August 12, 2012, Plaintiff filed a Motion for Judgment on the Administrative Record (Doc. No. 12), with a supporting Memorandum (Doc. No. 13). On October 25, 2012, Defendant filed a Response in Opposition. (Doc. No. 18.) On July 5, 2013, Magistrate Judge Brown issued the Report recommending that the Commissioner's decision be affirmed and Plaintiff's Motion be denied. (Doc. No. 19 at 23.) On July 17, 2013, Plaintiff filed Objections to the Report, specifically objecting to the brevity of the hearings. (Doc. No. 20.) Plaintiff claims that the ALJ failed to develop the record with regards to her allegation of mental impairments at the hearing and did not inquire as to the efforts she made to obtain a way of funding hernia repair surgery, despite concluding that her claim of disability was not credible because she failed to obtain this surgery. (*Id.* at 1–2.) On July 31, 2013, Defendant filed a Response to Plaintiff's Objections. (Doc. No. 21.)

*B. Factual Background*

The Court adopts the facts as stated in the Review of the Record in Magistrate Judge Brown's Report. (Doc. No. 19 at 2–8.)

**II.    STANDARD OF REVIEW**

3

The Court's review of the Report is *de novo*. 28 U.S.C. § 636(b). This review, however, is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, the reviewing court will uphold the ALJ's decision if it is supported by substantial evidence. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is a term of art and is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

"Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations, because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions as to the Plaintiff's claim on the merits than those of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

### III. PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

Plaintiff asserts three reasons why the ALJ's findings and denial of her claim are not based on substantial evidence. First, Plaintiff objects to the brevity of the hearings, which she claims rendered them "constitutionally deficient." (Doc. No. 20 at 1.) Second, Plaintiff claims the ALJ failed to develop the record concerning her allegation of mental impairments at the hearing. (*Id.* at 1–2.) Third, Plaintiff alleges the ALJ erred in doubting her credibility based on her failure to seek surgical repair of her hernia without inquiring as to the efforts she made to obtain a way of funding her hernia surgery. (*Id.* at 1–2.) The Court evaluates each argument in turn.

#### A. Brevity of the Hearings

Plaintiff claims ALJ Grissom failed to sufficiently develop the record due to the brevity of the hearings. (*Id.* at 1; Doc. No. 13 at 4–5.) In support of this argument, Plaintiff cites *Lashley v. Secretary of Health & Human Services*, 708 F.2d 1048, 1052 (6th Cir. 1983), where the court found a twenty-five minute hearing involving only superficial questioning and an unrepresented plaintiff of limited intelligence, to be insufficient. The Commissioner claims the ALJ thoroughly questioned Plaintiff, despite the brevity of the hearings, and relies on *Born v. Secretary of Health & Human Services*, 923 F.2d 1168, 1172 (6th Cir. 1990), for the proposition that the brevity of a hearing is not determinative of whether the hearing is adequate. (Doc. No. 18 at 14.)

As noted by the Commissioner, the Sixth Circuit has held that the brevity of a hearing is not dispositive of the issue of whether the conclusions made by an ALJ were erroneous. *Born*, 923 F.2d at 1172 (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir.

1986)). In fact, there is no bright line rule for determining when an ALJ fails to fully develop the administrative record, and the determination must be made on a case by case basis with more careful scrutiny provided when, as in this case, a claimant appears without counsel. *Lashley*, 708 F.2d at 1052. In *Lashley*, the brevity of the hearing, which lasted twenty-five minutes, influenced the court's conclusion that the ALJ did not fulfill his duty to fully develop the record. (*Id.*) However, in that case the court considered this factor in combination with the fact that the plaintiff "possessed limited intelligence, was inarticulate, and appeared to be easily confused." (*Id.*) Moreover, in reaching a different conclusion than *Lashley*, the *Born* court relied on the fact that in *Lashley* contradictions existed between the consulting medical experts and the claimant's treating physicians, whereas in *Born*, no such discrepancies were at issue. Thus, contrary to Plaintiff's assertion, the *Lashley* court did not find the brevity of the hearing alone rendered the hearings "constitutionally deficient." (*See* Doc. No. 20 at 1 (citing *Lashley*, 708 F.2d at 1051–52).)

In this case, the record shows the first hearing before ALJ Grissom lasted twenty-three minutes (Tr. 38, 57) and the second hearing lasted seventeen minutes (Tr. 24, 35). However, the record indicates there was simply little medical evidence for ALJ Grissom to inquire about. Between 2008 and 2010 Plaintiff visited medical professionals for treatment of her alleged disabilities only three times. (Tr. 233–38, 249–250, 285.) While the ALJ did not ask any questions concerning Plaintiff's medical history during the hearings, the record demonstrates that the ALJ carefully reviewed the medical evidence from those three visits. (Tr. 15.) The ALJ noted the three visits in his determination, including: Plaintiff's visit to the Putnam County Primary Care Clinic ("Putnam Clinic") on March 20, 2008, when Plaintiff reported her stomach had rapidly increased in size; Plaintiff's July 7, 2008, visit to the Putnam Clinic during which she

complained of nausea, pain, and spitting up blood and was diagnosed with a gallstone and a ventral hernia; and Plaintiff's visit to Cookeville Regional Emergency on March 29, 2010, when Plaintiff reported shortness of breath, nausea, vomiting, sweating, and chest pain. (*Id.*) In addition, ALJ Grissom conducted a second hearing to review the results of the consultative medical examination performed by Dr. Donita Keown, (Tr. 271–80), and carefully analyzed the results in his findings. Thus, as the Court finds that the ALJ both reviewed and analyzed Plaintiff's relatively uncomplicated medical history and examinations, the length of the hearings was justified.

The Court further notes that Plaintiff had multiple opportunities to inform the ALJ about important facts in her medical history. At the end of the first hearing, ALJ Grissom asked Plaintiff whether she wanted him to know anything else and Plaintiff indicated she did not. (Tr. 56.) At the end of the second hearing, ALJ Grissom asked the same question three times until Plaintiff stated she did not have anything else to tell him that she thought would influence his decision. (Tr. 28.) Assessing the specific facts surrounding the ALJ's development and analysis of the medical record in this case, the Court finds the ALJ adequately considered all the medical evidence in the record as well as the testimony at the hearings in determining Plaintiff did not qualify for SSI.

### B. *Mental Impairments*

Plaintiff also claims the ALJ failed to fully develop her mental health record. (Doc. No. 20 at 1.) Plaintiff contends that when she "attempted to testify about how her mental impairments affect her daily activities, the ALJ moved away from that line of questioning, and instead questioned her about her smoking . . . ." (Doc. No. 13 at 5.) Plaintiff argues the ALJ never sought any evidence of her psychological conditions or how they affect her ability to work.

7

(*Id*. at 6.) The Commissioner responds that neither Plaintiff's testimony nor her medical records show she had any mental impairments that the ALJ should have investigated. (Doc. No. 18 at 13–14.)

An ALJ should consider mental impairments in determining whether a plaintiff is disabled. 20 C.F.R. § 416.908 (2014). In particular, the relevant regulation provides

> "If [the claimant is] not doing substantial gainful activity, we always look first at [the claimant's] physical or *mental* impairment(s) to determine whether [the claimant is] disabled . . . . [The claimant's] impairment must result from anatomical, physiological, or *psychological* abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."

*Id*. (emphases added).

However, the ALJ will consider only the impairments that a plaintiff claims she has or about which the ALJ receives evidence. 20 C.F.R. § 416.912(a). The burden of proof lies with the plaintiff to show that she is disabled; specifically, the plaintiff "must furnish medical and other evidence" indicating she suffers from an impairment. *Id.* A diagnosis of mental impairment must be supported by clinical signs, laboratory reports, or test findings. *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(B)); 20 C.F.R. § 416.908. In *Moon*, the Sixth Circuit affirmed a district court's judgment that the plaintiff was not disabled because his allegation of disabling mental impairments was inconsistent with his failure to seek treatment or take medication. 923 F.2d at 1182–83. Further, in *Young v. Secretary of Health & Human Services*, 925 F.2d 146, 150–51 (6th Cir. 1990), the court found the plaintiff failed to produce objective evidence of the existence of a psychological impairment which could reasonably be expected to result in disabling pain, based on the first medical report the plaintiff relied on not containing a mental status exam to support a diagnosis

of post-traumatic stress disorder and the second report being based on the plaintiff's subjective complaints.

Here, at the first hearing, Plaintiff explained that her "nerves get so bad" when ALJ Grissom inquired about her about smoking. (Tr. 53.) Alhough Plaintiff alleges the ALJ's failure to follow up on that remark was in error, Plaintiff had the duty to prove that the statement about her nerves was referring to a mental impairment that was also supported by medical evidence in the record. In other words, Plaintiff's remark, absent the submission of additional relevant evidence or claims at the hearing, does not so clearly refer to a mental impairment that ALJ Grissom was required to inquire further. Indeed, even assuming Plaintiff was referring to a mental impairment, Plaintiff has failed to show any objective medical evidence exists in the record to support such an impairment. Additionally, even though ALJ Grissom did not inquire about her mental state, the Court finds Plaintiff had the opportunity to inform the ALJ about the details of any mental impairments she suffered from at the end of the hearing when asked if she had anything else to say. Plaintiff also points out that the ALJ failed to follow up when Plaintiff responded to the question of how she spent her days by answering that she was "going nuts." (Tr. 52.) However, the Court finds the ALJ could reasonably conclude that Plaintiff was referring to the inconveniences that resulted from her hernia rather than a mental impairment. (Tr. 53.)

Plaintiff also relies on the fact that she indicated in her Social Security Administration ("SSA") Disability Report that she was "stressed with sickness [and] weakness". (Tr. 179.) However, at her hearing Plaintiff testified that the only reason that she was not able to work was because of her hernia and associated pain. (Tr. 54.) Plaintiff also denied multiple times that she had seen or was planning to see a doctor for emotional or mental problems. (Tr. 155, 179, 205.)

9

Moreover, the record does not contain any evidence related to Plaintiff having a mental impairment. In the absence of any medical evidence or symptoms of mental impairments, the Court finds the ALJ was not required to inquire, sua sponte, about Plaintiff's mental health, or follow up on the above-referenced statements allegedly pertaining to a mental impairment.

Plaintiff also alleges that in failing to order a psychological consultative examination, the ALJ also neglected to adequately develop Plaintiff's medical history. (Doc. No. 13 at 6.) However, the regulations provide the ALJ with discretion over whether to order a consultative examination. *See* 20 C.F.R. § 416.917. *("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests.")* "[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Landsaw*, 803 F. 2d at 214.

Alhough ALJ Grissom did order a consultative physical examination, this alone does not create a burden to order a consultative mental examination as well. There was some evidence of physical impairment in the record, and the ALJ found the evidence of record insufficient to come to a determination as to physical disability. However, there was no medical evidence of any mental impairment present in the record.. Accordingly, the Court finds the ALJ's decision not to order a psychological consultative examination, in the absence of medical evidence suggesting mental impairments or an affirmative statement by Plaintiff, was not an abuse of discretion.

*C. Evaluation of Failure to Seek Medical Treatment and Inability to Pay for Care*

Plaintiff argues ALJ Grissom erred in judging her credibility based on her failure to obtain surgery to remedy her hernia without making an inquiry as to the efforts she made to

10

obtain funds for her surgery. (Doc. No. 20 at 1–2.) The Commissioner counters that the ALJ's determination of Plaintiff's credibility was sound because Plaintiff did not submit evidence of attempts made to contact the surgeons or charitable foundations recommended to her. (Doc. No. 18 at 20.)

According to the SSA, an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7P, 1996 WL 374186, at *7 (July 2, 1996). "However, [the ALJ] must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide," including inability to afford treatment. *Id.* at *7–*8. While a claimant's refusal without good cause to follow prescribed treatment that would restore the claimant's ability to work will result in a denial of disability benefits, *see Awad v. Sec'y of Health & Human Servs.*, 734 F.2d 288, 290 (6th Cir. 1984), where the record establishes that a claimant could not afford prescribed treatment which would restore his ability to work, the claimant's failure to receive that treatment cannot support a denial of benefits, *McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir. 1990). To properly demonstrate an inability to afford medical treatment, all possible resources, including clinics, charitable organizations, and public assistance agencies, must be explored, and the claimant's financial circumstances must be documented. SSR 82–59, 1982 WL 31384, at *4 (Jan. 1, 1982).

Because the burden is on the claimant to show that she is disabled, here, Plaintiff was required to present evidence of the efforts she made to obtain funding for a surgical repair of her hernia in order to show that she was unable to attain funds necessary to remedy her disabling

condition. Though there was evidence in the record that Plaintiff was provided with information about charitable foundations and other medical programs which offer financial assistance (Tr. 249, Doc. No. 20 at 2), the record does not indicate Plaintiff attempted to obtain funding for the surgery. When Plaintiff was diagnosed with a hernia on July 07, 2008, the Putnam Clinic recommended surgery and provided her with the contact information of a charitable foundation to assist with her medical expenses. (Tr. 249.) However, there is no evidence Plaintiff ever contacted this foundation or that they refused to fund her surgery. Additionally, the Notice of Disapproved Claim from the SSA, dated September 10, 2008, contained information about applying for TennCare and Medicaid as alternatives to Social Security Benefits. (Tr. 62.) However, instead of applying for TennCare or Medicaid, Plaintiff asserts, without support, that had she applied she would have been denied TennCare and Medicaid because they have the same requirements as the Social Security Act. (Doc. No. 20 at 2.)

In addition to the charitable foundation referral, the Putnam Clinic gave Plaintiff a list of surgeons to contact regarding repair of her hernia during her July 07, 2008, appointment and on March 29, 2010, Cookeville Regional Medical Center also provided Plaintiff a list of surgeons for her hernia repair. (Tr. 249, 283.) While Plaintiff testified that when she would call a physician "the first question they ask is what kind of insurance, and then they're not taking new patients," (Tr. 51–52), she did not present any evidence in writing showing that the surgeons she called refused her to perform operation because she did not have insurance. The record reflects ALJ Grissom carefully reviewed the above facts when evaluating Plaintiff's inability to pay as a reason for her failure to seek treatment. (Tr. 15–16; Doc. No. 19 at 20.) Thus, the Court finds the ALJ had substantial evidence supporting his conclusion that Plaintiff did not provide adequate support for a finding of disability, based on her inability to pay for a surgical remedy.

## IV. Conclusion

For the reasons stated above, Plaintiff's Motion is **DENIED** and the Court **ADOPTS** the Magistrate Judge's Report in its entirety. The decision of the Commissioner is **AFFIRMED** and this case is **DISMISSED**. The Clerk of the Court is **DIRECTED** to close the case.

It is so ORDERED.

Entered this the ___23rd___ day of June, 2014.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT